UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

L T TUCKER,

              Plaintiff,                  Case No. 2:22-cv-35

v.                                   Honorable Maarten Vermaat

K. MILLER et al.,

              Defendants.
_____/

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 10.)[1] Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

       This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134

---

[1] In the Court's order granting Plaintiff leave to proceed *in forma pauperis*, the Court determined that although Plaintiff has had at least three cases dismissed on the grounds that they were frivolous, malicious, and/or failed to state a claim, *see, e.g.*, *Mease v. Williams*, No. 1:00-cv-849 (W.D. Mich. Nov. 29, 2000); *Tucker v. Hembree*, No. 4:94-cv-105 (W.D. Mich. July 15, 1994); *Tucker v. Kinney*, No. 4:94-cv-101 (W.D. Mich. June 30, 1994); *Tucker v. Chapin*, No. 4:94-cv-100 (W.D. Mich. June 30, 1994), Plaintiff had sufficiently alleged that he was in imminent danger of serious physical injury, and as such, he was permitted to proceed *in forma pauperis* in this action. (ECF No. 10, PageID.53 n.1.)

(6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently

2

parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[2]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's conspiracy claims and Fourteenth Amendment equal protection claims. Plaintiff's First Amendment retaliation claims, Eighth Amendment claims, and state law claims remain in the case. Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.26; ECF No. 11, PageID.78) will be denied.

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following AMF officials: Prison Guards K. Miller, Unknown Wyatt, M. Turunen, R. Wertanen, and Unknown Desellier.[3] (Am. Compl., ECF No. 11, PageID.58.)

Plaintiff alleges that on November 1, 2021, Plaintiff told Defendant Miller that he would write a grievance on her regarding the allegation that he used the phone without staff authorization. (*Id.*, PageID.60–61.) Plaintiff contends that on November 2, 2021, Defendant Desellier came to Plaintiff's cell and "made retaliatory animus statements." (*Id.*, PageID.61.) That same day, Defendant Desellier "served a retaliatory false notice of intent to conduct an administrative hearing," which resulted in Plaintiff being placed on phone restriction from November 1, 2021, through November 30, 2021. (*Id.*) Plaintiff contends that Defendant Miller had written "Plaintiff a retaliatory false telephone restriction." (*Id.*, PageID.60.)

Subsequently, on December 18, 2021, Defendant Miller told Plaintiff that "she was going to get Plaintiff for writing grievances on her." (*Id.*) "Defendant Miller made [a] false claim about Plaintiff using the phone without staff authorization." (*Id.*) Plaintiff explained that he would not have been able to make the phone calls in question without staff authorization. (*Id.*, PageID.62.) On November 2, 2021, and December 19, 2021, Defendants Desellier and Wyatt "tried to force

---

[3] In the case caption of the amended complaint, Plaintiff spells Defendant Desellier's last name as "Dessellie" (Am. Compl., ECF No. 11, PageID.57), and when listing the parties in this action, Plaintiff spells Defendant's last name as "Delessier" (*id.*, PageID.58). However, in the body of the amended complaint, Plaintiff largely refers to this Defendant as "Defendant Desellier." In this opinion, the Court identifies this Defendant as Defendant Desellier.

Plaintiff to plead guilty to the known retaliatory false notice of intent to conduct an administrative hearing and misconduct report written by Defendant K. Miller on November 1, 2021[,] and December [18,] 2021." (*Id.*, PageID.63.) Plaintiff alleges that Defendants Desellier and Wyatt told Plaintiff if he did not plead guilty and "accept the sanctions of a telephone restriction for 30 days that they would make sure Plaintiff gets the telephone restriction for complaining so much." (*Id.*)

On January 11, 2022, Captain Buda (not a party) held a Class II and Class III misconduct hearing at which Plaintiff provided a two-page and a three-page "defense of retaliation." (*Id.*) Plaintiff states that Captain Buda dismissed the Class II misconduct report "based on Plaintiff's assertion that the misconduct report was a retaliatory false report and that Plaintiff ha[d] staff authorization [to use the phone]." (*Id.*, PageID.64.)

On January 12, 2022, and January 13, 2022, Plaintiff alleges that Defendant Miller "intentionally took Plaintiff's food tray and medical snack bag out of retaliation of Plaintiff's pending grievances." (*Id.*, PageID.69.)

On January 13, 2022, Defendants Turunen and Miller came to Plaintiff's cell for "an unexpected in[-]house [d]octor callout." (*Id.*, PageID.64.) Plaintiff contends that Defendant Miller "has a pattern and practice of coming to Plaintiff's cell unexpectedly in an attempt to deny Plaintiff access to medical treatment." (*Id.*) Plaintiff also contends that Defendant Miller discriminates against Plaintiff because of his diagnoses for "Type 2 Diabetes insulin dependence," "hypertension high blood pressure," "Diabetes Glaucoma progressive vision loss," and "Diabetes peripheral neuropathy in hands, arm, legs and feet." (*Id.*) Plaintiff states that as Defendant Turunen was applying the handcuffs to take Plaintiff to the doctor callout, Defendant Turunen "applied the cuffs to Plaintiff[']s left wrist excessively tight." (*Id.*, PageID.65.) Plaintiff contends that the "great force result[ed] in serious injuries to his left wrist and right shoulder." (*Id.*, PageID.69.) Plaintiff states

that he "asked the Doctor to look at his left wrist and right shoulder." (*Id.*, PageID.65.) Plaintiff does not indicate whether the doctor made any comment or diagnoses regarding Plaintiff's left wrist or shoulder. (*See id.*)

After Plaintiff's appointment, when returning to his cell, he advised Defendant Turunen that he would "file a grievance on him for placing the handcuffs on Plaintiff in an excessively and extreme manner." (*Id.*) Subsequently, Defendant Miller "facilitated a retaliatory conspiracy as a direct result of Plaintiff's pending grievances against Defendant K. Miller," and Defendant Miller "told Defendant Turunen to write Plaintiff a retaliatory false misconduct report for threatening behavior because[] Plaintiff told Defendant Turunen [that] Plaintiff was going to file a grievance on Defendant Turunen." (*Id.*)

Additionally, on January 13, 2022, Plaintiff alleges that Defendant Miller "wrote a retaliatory false misconduct report against Plaintiff" for disobeying a direct order. (*Id.*, PageID.67.) Plaintiff contends that he did not disobey a direct order and that Defendant Miller and Turunen were "bragging about how [they] . . . filed a retaliatory false misconduct report[] on Plaintiff for complaining so much." (*Id.*)

On January 18, 2022, Defendant Turunen "[i]ntentionally took Plaintiff's medical snack bag and his dinner food tray out of retaliation of his pending grievances against him," stating, "Oh you don't eat again until you stop filing grievances." (*Id.*, PageID.70.)

On January 20, 2022, Defendant Wertanen held an administrative hearing for one of Plaintiff's January 13, 2022, misconduct reports. (*Id.*, PageID.67.) Defendant Wertanen "threaten[ed] [Plaintiff]" and stated that if Plaintiff did not plead guilty, Defendant Wertanen would find Plaintiff "guilty anyway for filing all them [sic] grievances on [him]." (*Id.* (emphasis

omitted).) Plaintiff also claims that Defendant Wertanen stated that he knew that Plaintiff had "put [his] name in [a] civil action." (*Id.*, PageID.67–68.)

On February 4, 5, and 6, 2021, Defendants Miller and Turunen "intentionally interfered with Plaintiff's medical call out to get his insulin shots out of retaliation of his pending grievances." (*Id.*, PageID.69.) Specifically, Plaintiff contends that Defendants Miller and Turunen "said they were not getting him out to get his insulin shots . . . because Plaintiff filed grievances on them for their violations that were in violation of their own procedures." (*Id.*, PageID.69–70.)

When discussing the imminent danger that he faced when he filed this lawsuit, Plaintiff claims that in addition to receiving the two above-discussed misconduct reports on January 13, 2022, on that same date, Defendant Miller told Plaintiff that she would "kick [him] down the stairs and paralyze [him] for filing all them [sic] grievances on [her] and staff." (*Id.*, PageID.71.) The following day, January 14, 2022, Plaintiff claims that Defendant Turunen stated that Defendant Turunen would "hit [Plaintiff] so hard on the head" that he would have "brain damage" and would be in a "coma," and Plaintiff would not be able to "file any complaints." (*Id.*) Later that same day, Plaintiff contends that Defendant Turunen also stated, "we [are] going to pull you out of that cell and staff [sic] your kidney out your ass and put you on kidney dialysis." (*Id.*) On January 20, 2022, Plaintiff claims that Defendant Wertanen told Plaintiff "[i]f you don't stop filing all them [sic] grievances and civil actions on staff we [are] going to hang your ass and make it look like suicide." (*Id.*) Subsequently, Plaintiff claims that when he was writing his amended complaint on May 10, 2022, Defendant Wyatt brought mail to Plaintiff and stated: "You don't stop filing that civil [expletive] in court, we[']re going to kill you." (*Id.*)

Based on the foregoing allegations, Plaintiff alleges that Defendants engaged in a civil conspiracy under § 1983 and violated his rights under the First Amendment,[4] the Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and state law. (*Id.*, PageID.57, 74–77.) As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive and declaratory relief. (*Id.*, PageID.78.)

## II.   Request for the Appointment of Counsel

Plaintiff has requested the appointment of counsel. (ECF No. 1, PageID.26; ECF No. 11, PageID.78.) Indigent parties in civil cases have no constitutional right to a court-appointed

---

[4] In the context of discussing his First Amendment retaliation claim, Plaintiff states that "he has a 1st Amendment right . . . to free speech and the right to petition the government to redress his grievances without being subjected to being retaliated against for exercising such rights." (Am. Compl., ECF No. 11, PageID.74.) Based on the nature of Plaintiff's retaliation claims, it appears that Plaintiff is referring to his right to file grievances when referencing his right to "free speech" and the "right to petition the government." To the extent that Plaintiff intended to allege that Defendants have interfered with his right to petition the government by interfering with his access to the grievance process, the First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977); *cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable First Amendment claim regarding any interference with his access to the grievance process.

attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that, at this time, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.26; ECF No. 11, PageID.78) therefore will be denied.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

9

alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Civil Conspiracy Under § 1983

Plaintiff contends that "Defendants collectively carried out a conspiracy to take overt acts in furtherance of a single plan to cause injury to deter Plaintiff in exercising his 1st Amendment rights to petition and speech." (Am. Compl., ECF No. 11, PageID.59.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible

suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff vaguely alleges that on May 1, 2022, he "had a conversation" with an unnamed staff member "who personally brought up Plaintiff's grievances and civil action activity and expressed knowledge of the point that just about all the staff . . . at [the] facility don't like Plaintiff's protected conduct and that Plaintiff can expect staff to take adverse action [against Plaintiff]." (Am. Compl., ECF No. 11, PageID.60.) However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe discrete occurrences involving AMF officials. Plaintiff appears to rely entirely on a highly attenuated inference of a conspiracy from the mere fact that AMF officials took allegedly adverse actions against him, including issuing him three misconduct reports from December 2021 through January 2022, all of which Plaintiff believed to be "false" misconduct reports.

As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts to show an

11

agreement among Defendants, and instead, alleges that on several discrete occasions, Defendants allegedly took actions against him, Plaintiff fails to state a plausible claim of conspiracy.

### B. First Amendment Retaliation

Plaintiff alleges that Defendants Miller, Wyatt, Turunen, Wertanen, and Desellier violated his First Amendment rights by retaliating against him.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1. Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that

12

the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). In this action, Plaintiff references filing, or advising at least one prison official that he would file, grievances. Although some of Plaintiff's allegations regarding filing grievances are conclusory, because the filing of grievances constitutes protected activity, the Court assumes, without deciding, that Plaintiff has stated the first element of a First Amendment retaliation claim.

### 2.   Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *see also Hill*, 630 F3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation.").

### a.   Misconduct Tickets

Here, Plaintiff alleges that he received three misconduct tickets—one on December 18, 2021, for unauthorized use of the phone, and two on January 13, 2022, for threatening behavior and for disobeying a direct order. Plaintiff also alleges that Defendants Wyatt, Desellier, and

Wertanen tried to force Plaintiff to plead guilty to the "false" misconduct report and threatened him with additional loss of privileges if he did not do so. Plaintiff's receipt of these misconduct charges and the threat that he would lose privileges constitute adverse actions. *See Maben*, 887 F.3d at 266 (holding that in determining whether an action constitutes an adverse action, courts should "look to both the punishment [the prisoner] could have faced and the punishment he ultimately did face" (citations omitted)).

### b.      Threats of Physical Harm

Further, Plaintiff alleges that Defendants Miller, Turunen, Wyatt, and Wertanen made specific threats to cause severe harm to Plaintiff's person. Although vague threats of unspecified harm fall short of adverse action, a specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (discussing a threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (discussing a threat to change drug test results). At this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, the Court concludes that the alleged specific threats of severe physical harm to Plaintiff made by Defendants Miller, Wyatt, Turunen, and Wertanen constitute adverse action.

### c.      Denial of Medical Care

Plaintiff claims that Defendants Miller and Tururen "intentionally interfered with his medical call out to get his insulin shots" on February 4, 5, and 6, 2021, "out of retaliation of his pending grievances when they said they were not getting him out to get his insulin shots . . . because Plaintiff filed grievances on them." (Am. Compl., ECF No. 11, PageID.70.) The Sixth Circuit has held that the denial of, or a delay in, medical treatment—including the "discontinuance of medication"—may constitute an adverse action. *See O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014) (citation omitted) (discussing that a "delay in treatment and

14

discontinuance of medication would likely deter a prisoner . . . who believed he needed the medication to avoid the symptoms from which he allegedly suffered"). As such, at this stage of the proceedings, the Court assumes, without deciding, that the alleged interference with Plaintiff's receipt of his insulin shots constitutes adverse action.

### d.    Denial of Food Tray and Medical Snack Bag

Plaintiff alleges that, on January 12 and 13, 2022, Defendant Miller "intentionally took Plaintiff's food tray and medical snack bag out of retaliation of Plaintiff's pending grievances." (Am. Compl., ECF No. 11, PageID.69.) Plaintiff further alleges that, on January 18, 2022, Defendant Turunen "[i]ntentionally took Plaintiff's medical snack bag and his dinner food tray out of retaliation of his pending grievances against him," stating, "Oh you don't eat again until you stop filing grievances." (*Id.*, PageID.70.) At this stage of the proceedings, the Court assumes, without deciding, that Defendant Miller's and Turunen's actions constitute adverse action.

### 3.    Retaliatory Motive

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. Here, Plaintiff alleges that Defendants made statements indicating that they were taking the various above-discussed adverse actions against Plaintiff because he had engaged in protected conduct. Although Plaintiff has by no means proven retaliation, viewing the allegations in the amended complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff's First Amendment retaliation claims against Defendants Miller, Turunen, Wyatt, Wertanen, and Desellier may not be dismissed on initial review.

### C.    Eighth Amendment

Plaintiff alleges that Defendants Miller and Turunen violated his rights under the Eighth Amendment. (Am. Compl., ECF No. 11, PageID.76–77.) The Eighth Amendment imposes a

constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).

### 1. Excessive Force

Plaintiff alleges that Defendant Turunen used excessive force against him when Defendant Turunen "applied the cuffs to Plaintiff[']s left wrist excessively tight." (Am. Compl., ECF No. 11, PageID.65.)

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was

16

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

In this action, Plaintiff alleges that Defendant Turunen "used excessive force intentionally . . . when he applied the handcuffs to [Plaintiff's] left wrist with great force resulting in serious injuries to [Plaintiff's] left wrist and right shoulder." (Am. Compl., ECF No. 11, PageID.69.) At this stage of the proceedings, Plaintiff's allegations, taken as true and in the light most favorable to Plaintiff, are sufficient to state an Eighth Amendment excessive force claim against Defendant Turunen. *See e.g.*, *Jones v. Washington*, No. 1:17-cv-406, 2017 WL 2390259, at *3 & n.1 (W.D. Mich. June 2, 2017) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016); *Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015)).

### 2.      Interference with Health Care

Plaintiff claims that Defendants Miller and Tururen "intentionally interfered with his medical call out to get his insulin shots" on February 4, 5, and 6, 2021." (Am. Compl., ECF No. 11, PageID.70.)

A claim for the deprivation of adequate medical care in violation of the Eighth Amendment also has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence

18

in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

With respect to non-medically trained prison staff members, such as Defendants Miller and Tururen, non-medically trained prison staff members are not deliberately indifferent when they defer to a "medical recommendation that he reasonably believes to be appropriate, even if in retrospect that recommendation was inappropriate." *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017); *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *Stojcevski v. Macomb Cnty.*, 827 F. App'x 515, 522 (6th Cir. 2020) ("[A]n officer who seeks out the opinion of a doctor is generally entitled to rely on a reasonably specific medical opinion for a reasonable period of time after it is issued, absent circumstances such as the onset of new and alarming symptoms." (quoting *Barberick v. Hilmer*, 727 F. App'x 160, 163–64 (6th Cir. 2018) (per curiam))). However, in the present action, Plaintiff does not contend that Defendants Miller and Tururen relied on medical personnel's recommendations when interfering with Plaintiff's

19

receipt of his insulin shots. Although Plaintiff's allegations regarding Defendants Miller's and Tururen's interference with his receipt of medical care lack specificity, at this stage of the proceedings, the Court concludes that this claim may not be dismissed.

### 3. Receipt of Food Trays and Medical Snack Bags

Plaintiff contends that on January 12, 2022, and January 13, 2022, Defendant Miller "intentionally took Plaintiff's food tray and medical snack bag." (Am. Compl., ECF No. 11, PageID.69.) Further, Plaintiff contends that, on January 18, 2022, Defendant Turunen "[i]ntentionally took Plaintiff's medical snack bag and his dinner food tray out." (*Id.*, PageID.70.)

As with Plaintiff's above-discussed Eighth Amendment claims, in order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from

20

liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Allegations about temporary inconveniences do not typically show that the conditions of confinement fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006). In the present action, Plaintiff does not allege that he was denied his food tray and medical snack bag for an extended period of time; however, Plaintiff alleges facts indicating that he is a diabetic and that Defendants Miller and Turunen would have been aware of this. Under these circumstances, the Court concludes that Plaintiff's claims regarding Defendants Miller and Turunen taking his food trays and medical snack bags may not be dismissed on initial review.

### D.      Fourteenth Amendment Equal Protection Clause

Plaintiff vaguely asserts that he was "deprived of equal protection" and that he was discriminated against because of his diagnoses for "Type 2 Diabetes insulin dependence," "hypertension high blood pressure," "Diabetes Glaucoma progressive vision loss," and "Diabetes peripheral neuropathy in hands, arm, legs and feet." (Am. Compl., ECF No. 11, PageID.57, 64.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner

does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).

Here, Plaintiff alleges in a conclusory manner that Defendant Miller discriminated against him because of his diagnoses for several chronic health conditions. (*See* Am. Compl., ECF No. 11, PageID.64.) Disability is neither a suspect class nor a quasi-suspect class. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001). Because neither a fundamental right nor a suspect class is at issue in this action, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To a establish a violation of the Equal Protection Clause, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff's allegation of discriminatory treatment due to his disability is wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S.

at 555. Plaintiff fails to allege any facts to suggest that he was intentionally treated differently than any other similarly situated prisoner.

Moreover, to the extent that Plaintiff intended to assert an equal protection claim in a class-of-one case, he fails to state such a claim. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (quoting *Club Italia Soccer & Sports Org., Inc.*,

23

470 F.3d at 298)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Even viewing Plaintiff's equal protection claim as a class-of-one claim, Plaintiff's equal protection claims are wholly conclusory. Plaintiff fails to allege any facts to demonstrate that his fellow inmates were similar in all relevant aspects. Plaintiff's conclusory allegations simply do not suffice to state a claim. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

Accordingly, for all of the reasons set forth above, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

### E. State Law Claims

In addition to Plaintiff's federal claims, Plaintiff claims that Defendants violated his rights under state law. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law or the MDOC's policies therefore fail to state a claim under § 1983.

Moreover, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v.*

24

*Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff continues to have pending federal claims against Defendants, the Court will exercise supplemental jurisdiction over his state law claims against Defendants.

## <u>Conclusion</u>

Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.26; ECF No. 11, PageID.78) will be denied. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's conspiracy claims and Fourteenth Amendment equal protection claims will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claims and state law against Defendants Miller, Wyatt, Turunen, Wertanen, and Desellier remain in the case. Additionally, Plaintiff's Eighth Amendment claims against Defendants Miller and Turunen remain in the case. Plaintiff has requested that this case be excluded from participation in the *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program. (ECF No. 3.) The Court will therefore serve the complaint against Defendants Miller, Wyatt, Turunen, Wertanen, and Desellier.

An order consistent with this opinion will be entered.

Dated:     August 16, 2022                    /s/ *Maarten Vermaat*
                                              Maarten Vermaat
                                              United States Magistrate Judge